[Civ. No. 17115.   First Dist., Div. One.   Feb. 8, 1957.]

WALTER H. GUNN et al., Respondents, v. FRED J. FONTES et al., Appellants.

Fred B. Mellmann and Russell P. Studebaker for Appellants.

Phillips, Avakian & Johnston and Thomas B. Richardson for Respondents.

WOOD (Fred B.), J.—Upon defendants' appeal from a judgment declaring that a certain road across defendant Fred Fontes' land is a public road and is 14 feet wide, defendants claim the evidence is insufficient to show (1) an offer to dedicate to a public use, (2) acceptance by the public of the offer, or (3) that the road is 14 feet wide.

The offer appeared upon a subdivision map entitled "Map of Van Hoosear Tract" which depicted several parcels of land and across some of them certain roads, including the road in suit, indicated by parallel broken lines and the designation "common road" (except one which was designated "private road"). The map was filed with the county recorder on August 28, 1899, by Mary A. Van Hoosear who signed the map and over her signature (acknowledged before a notary) stated that she was the proprietor of the land shown and designated upon the map.[1]

█ Dedication of land for public use (when considered as a voluntary transfer of an interest in land) is the joint effect of an offer by the owner and acceptance by the public. (*County of Inyo* v. *Given*, 183 Cal. 415, 417 [191 P. 688].)

█ The offer may be manifested in any of several different ways (by deed, by map,[2] or in other ways); in the instant case, by map. █ Acceptance may be effected by action

---

[1]Defendants interposed no objection to the map except as to the broken lines (designated "common road") which extend across the subdivision parcel of which the Fred Fontes' land is a part, upon the ground that it is "uncertain . . . although it pretends to depict, delineate a road, there is no course or distance or width indicated on it, and therefore it's indefinite and uncertain and has no relevancy to the issues of this case."

[2]The making and recording of a subdivision map depicting a certain area as a road, street or highway is a well established method of making an offer to dedicate that area for public use. (*San Francisco* v. *Burr*, 108 Cal. 460, 461 [41 P. 482], "a space corresponding to a street," on either side of which certain "lots" were shown; *City of Los Angeles* v. *McCollum*, 156 Cal. 148, 151 [103 P. 914, 23 L.R.A.N.S. 378], a certain strip was deemed marked on the map as a street even though not named or designated as a street; *San Francisco Sulphur Co.* v. *Contra Costa*

of the appropriate governmental body or by use by the public. Here, acceptance was manifested by the use which the public made of the "common road" which the owner tendered when she signed and recorded the map.

The intent to offer to dedicate a road to public use seems clear. But, say the defendants, the map was too indefinite and uncertain in its description and depiction of the strip designated "common road" to serve as an offer.

They rely upon the testimony of their surveyor who testified that he could from the map accurately locate the courses and distances of the property lines but not of the road lines because the map gave the former but not the latter. As to the width of the road, the map did not state the distance (in feet or other units of measurement) between the parallel broken lines. But by applying the scale (1″ = 200′) indicated by the legend which the map bore, the witness estimated they were about 10 feet apart (indicating a road width of 10 feet) but doubted if the map-maker intended to draw those lines to scale. In short, he could not by use of the map alone locate the course, distance and width of the road across defendants' land with any degree of certainty.

He was able, however, to "find the road as it existed on the ground." He prepared a metes and bounds description and a plat of the traveled portion of the road, and defendants put the description and the map in evidence. Lay witnesses familiar with this area, including the road, had no difficulty in identifying the road as it existed on the ground with the road depicted on the 1899 recorded map, including Mrs. Fink who had known this road since 1912 and Mr. Jorgensen who first observed it in 1925, each of whom testified that its location had not changed since the witness first saw it.

We do not know, of course, whether the road actually existed when the map was filed in 1899. Its existence as a traveled road in 1912 tokened prior use for an appreciable period of time; how long a period we do not know. That, however, is not material. The offer was to dedicate a road to the public

County, 207 Cal. 1, 5-6 [276 P. 570], the recording of a subdivision map that designates certain spaces as thoroughfares or public streets; Elliott v. McIntosh, 41 Cal.App. 763, 766 [183 P. 682], certain portions designated as public streets or highways; City of Burlingame v. Norberg, 210 Cal. 105 [290 P. 587], the marking upon a subdivision map of a strip ("without name or number") which was some 20 feet wide and embraced the bed of a creek, was deemed an offer of that strip for public use as a drainage channel.

along the course roughly indicated by the parallel broken lines. It does not matter greatly whether the road had already been marked upon the ground by wagon tracks or surveyor's stakes or remained yet to be located upon the ground. In any case its precise course was determined (by the owner with acceptance by the public or by public user acquiesced in by the owner) at least as early as 1912.

Thus, by practical construction, that which, assertedly, was indefinite and uncertain has been made definite and certain. This is a familiar and well established principle which, in the law of contracts, has been expressed in these words: "The acts of practical construction placed upon a contract by the parties are binding, and may be resorted to to relieve it from doubt and uncertainty." (6 Cal.Jur. 217, Contract, § 142.)

In the law of easements this principle has been applied to the grant of a right of way whose course the instrument of grant fails to define, expressed by our Supreme Court as recently as 1952 in *Youngstown Steel etc. Co.* v. *City of Los Angeles,* 38 Cal.2d 407, 410-411 [240 P.2d 977]: "It is well settled that if the location of a right of way is not defined by the grant, a reasonably convenient and suitable way is presumed to be intended . . . Where the right of way has been used at a particular location with the acquiescence of the servient owner, the parties have, in effect, placed their own practical construction upon the grant, and the easement will be regarded as fixed at that place . . . Once the location of an easement has been finally established, whether by express terms of the grant or by use and acquiescence, it can not be substantially changed without the consent of both parties . . ."

We think those principles apply here. "A common law dedication has been described as 'a voluntary transfer of an interest in land . . . [which] partakes both of a nature of a grant and of a gift, and is governed by the fundamental principles which control such transactions.' . . ." (*Union Transp. Co.* v. *Sacramento County,* 42 Cal.2d 235, 240 [267 P.2d 10].)

When the parties may by their conduct fix the course of a right of way which the grant wholly fails to define, it would seem competent for them by their conduct to fix with precision the course of a right of way which the offer fixes roughly or approximately although not precisely as to detail. The public by the course it traveled in acceptance of the Van Hoosear offer and the landowner by acquiescence therein,

placed their own construction upon the offer and consummated a dedication which was definite and certain.

*People* v. *Southern Pac. R. R. Co.*, 68 Cal.App. 153 [228 P. 726], upon which defendants heavily rely, is readily distinguished. The map in question was a public map, prepared under instructions from a town board of trustees, not the landowner, hence, not in itself evidence of dedication. When recorded 11 years later, the copyist in the county recorder's office erroneously omitted the west line of the street in question (which, in effect, omitted the street entirely from the map, the street's easterly line becoming the western boundary of the tract depicted), and during the 11-year interval between the making of the map and its filing in the recorder's office, persons acquired title under conveyances which ignored the existence of any street or supposed street and disposed of the area as private property, "a withdrawal of the offer of dedication—if any such offer had been made." (P. 160.)

We conclude that the evidence supports the finding that the making and recording of the Van Hoosear Tract Map constituted an offer of dedication of this road to the public.

Concerning acceptance of this offer, the trial court found, upon evidence which supports the finding, that this road was used continuously from 1912 to August, 1950, by the general public as well as by the owners of land contiguous to the road, their guests, trades people, servants and employees, without objection by defendants or their predecessors, and that such use constituted an acceptance of the offer to dedicate this road as a public road.

██ Defendants claim this finding fatally defective because of the absence of a finding that this use was adverse.

Proof that the public user was adverse might well have been necessary if there had been no proof, as an independent fact, of the offer to dedicate; e.g., if no road had been indicated upon the map or if no map had been filed, and proof that an offer had been made depended solely upon long user of the road by the public, in the absence of circumstances negativing the idea that such use was made under a license.

It is different when, as here, the finding of an offer is predicated upon substantial evidence that an offer was made; i.e., the recording of a map by which the owner tendered the road for public use.

It then remains only to find acceptance of the offer; evidenced in this case by the use of the road by the public.

██ To evidence such acceptance the public's use need not

be for the five-year prescriptive period. It may, indeed, be but a short time, "because the offer to dedicate, and the acceptance by use, both being shown, the rights of the public have immediately vested." (*Schwerdtle* v. *County of Placer*, 108 Cal. 589, 593 [41 P. 448]; quoted with approval in *Union Transp. Co.* v. *Sacramento County, supra*, 42 Cal.2d 235, 241, and in *Morse* v. *Miller*, 128 Cal.App.2d 237, 245 [275 P.2d 545]. See also *Elliott* v. *McIntosh*, 41 Cal.App. 763, 766-767 [183 P. 692], and *Fitzgerald* v. *Smith*, 94 Cal.App. 480, 483-484 [271 P. 507].)

In support of its contention that the absence of a finding of adverse user is fatal to the finding that the offer to dedicate was accepted by public user, defendants cite *Niles* v. *City of Los Angeles*, 125 Cal. 572 [58 P. 190]. But the facts of that case are not comparable to those of this case. There the trial court found a number of probative facts and then from those probative facts drew the conclusion[3] that the land in question was a public street. The only findings which tended to show an offer to dedicate were not supported by the evidence, with the result that the showing of an offer to dedicate (if any had been made) depended entirely upon a finding that the land in question had for some 10 years been used and traveled by the public as a public street (not an adverse user). In short, there was in the Niles case neither a finding of an offer to dedicate nor a finding of adverse user. The absence of both was fatal. The existence of either (if supported by the evidence), together with other facts found, would have supported the trial court's conclusion that this was a public street. In tacit if not explicit recognition of this, the court in the Niles case quoted the following significant passage from *Harding* v. *Jasper*, 14 Cal. 642, 647, at pages 576-577 of 125 Cal.: " 'The vital principle of the dedication is the intention to dedicate; and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made. Time, therefore, though often a material ingredient in the evidence, is not an indispensable ingredient in the act of dedica-

---

[3]When ultimate facts are tied in with and made dependent upon the probative facts found, a reviewing court must look to the probative facts for their support. (*Garrison* v. *Edward Brown & Sons*, 25 Cal.2d 473, 478 [154 P.2d 377]; *Estate of Kerr*, 127 Cal.App.2d 521, 523-524 [274 P.2d 234].)

It does not matter, of course, whether a finding of fact appears among the "facts found" or among the "conclusions of law"; it may and should be regarded as one of fact even though mistakenly placed among the conclusions of law. (See cases collected in 24 Cal.Jur. 961, Trial, § 199, note 19.)

tion. If accepted and used by the public in the manner intended, the dedication is complete—precluding the owner, and all claiming his right, from asserting any ownership inconsistent with such use.' ''

Thus it is clear that the evidence supports the finding of acceptance by the public. That, coupled with adequate proof of the offer, establishes the character of this road as a public road.

■ Finally, defendants question the sufficiency of the evidence to support the finding that it is 14 feet wide. We are convinced that the supporting evidence is sufficient.

An engineer in the course of preparing plans for sanitary district improvements, made a survey of this road in 1950 and made a plat showing the traveled portion, confining his measurements to the graveled area, which varied from 12 to 14 feet in width. This was supplemented by the testimony of laymen, including two who said that before defendant Fontes recently began to narrow the road, there was sufficient room for cars to pass on it, and one who said that in 1948 and again in 1953 he took over this road a hay baler that required a width of 12 feet to get through.

The judgment is affirmed. The appeal from the denial of the motion for a new trial (a nonappealable order) is dismissed.

Peters, P. J., and Bray, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 2, 1957.