[No. C041796. Third Dist. Mar. 2, 2004.]

GARY HANSHAW et al., Plaintiffs and Respondents, v.
LONG VALLEY ROAD ASSOCIATION et al., Defendants and Appellants.

**COUNSEL**

Michael W. Thomas and Trainor Robertson for Defendants and Appellants.

Haley & Bilheimer, Allan S. Haley and John Bilheimer for Plaintiffs and Respondents.

**OPINION**

**MORRISON, J.**—In *Hanshaw v. Long Valley Road Assn.* (July 31, 1997, C023486) a nonpublished opinion (*Hanshaw I*), we upheld a judgment awarding various property owners (collectively, Hanshaw) a private road easement south to Long Valley Road (the road); whether they could use the road itself was not adjudicated. Hanshaw then sued an association of the landholders along the road, defendant Long Valley Road Association (LVRA), alleging the road had become a public road by virtue of public use and dedication; he also alleged a prescriptive easement.

 The trial court rejected the prescriptive easement theory, but found the road had become public, notwithstanding Nevada County's refusal to accept an offer to dedicate the road pursuant to California's Subdivision Map Act. (Gov. Code, § 66410 et seq. (the Act).) We agree with the trial court that a failure to complete a statutory dedication does not negate the possibility of a common law dedication. We conclude substantial evidence supports the trial court's finding that such a dedication took place. We also conclude that Civil Code section 1009—which allows a landowner to open land for public recreational use without fear of an implied dedication finding—has no application to nonrecreational use of land. Finally, we conclude LVRA's failure to appeal from the postjudgment fee award bars its challenge to that award. We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

We reproduce in the appendix two crude sketches we used in *Hanshaw I* to illustrate the area of the road. (See appen.)

Although there was some evidence of paths connecting Indian Springs Road north to Rex Reservoir, they were undocumented meanders. There was some evidence that a four-wheel-drive vehicle could travel from Indian Springs Road up to Highway 20 before the road was built, and that the road generally followed the old track except that it was straighter. The road was built beginning in 1975 and extends from Indian Springs Road to the Warren-Ardito property. Across that property is an S-shaped bypass called Angie Court, which leads to Flying T Road, where Hanshaw lives. The road was built for a new subdivision and it was a deadend road until Hanshaw used it to shorten the commute to the south.

The land along the road was burdened by recorded road maintenance agreements which allow LVRA to make assessments to maintain the road. When the road was built and the land subdivided, the owners offered to dedicate the road to Nevada County (the County) in three stages, for convenience the Northern, Middle and Southern stages. An offer to dedicate a road under the Act is supposed to be accepted, accepted subject to improvement, or rejected. (Gov. Code, § 66477.1.) The County accepted the Middle portion "for all public utility purposes, and for public access, but without accepting maintenance responsibility" for the road. However, it never acted on the other offers, thereby creating a landlocked public road.

There was testimony that the County's policy on accepting road offers had changed over time. Beulah "Boots" Rusk, one of the LVRA developers, testified developers want roads to be public "because then the public become[s] responsible for the repairs and the maintenance. But it was very clear to us in Nevada County, they did not own these little side roads, everything was private, basically." "[Y]ou have to dedicate to the County, but they don't accept it, they just say do the dedication and you have to build to the County [specifications]. But then they don't take over the road, that's why everybody else has to take care of them."

Beginning in 1986, LVRA erected permissive use signs on the road. People living to the north of LVRA parcels used the road. In 1993, LVRA asked Hanshaw to join LVRA and contribute to the maintenance, but he refused.

In an oral tentative decision the trial court concluded the unaccepted offers to dedicate, which were irrevocable by statute except in cases not here relevant, created "public rights" in the road. The trial court reasoned that after recordation of a dedication offer, ensuing public use of the road could be an informal type of acceptance.

In a minute order ruling on objections to the tentative decision, the court held "The basis of the decision is . . . use pursuant to a subdivision map with

an offer of dedication made under the [Act] and recordation of that map, coupled with the sale of lots.pursuant to that map and use as a result thereof." The court rejected the argument that the Act required acceptance "by a government entity pursuant to the procedures set forth in the Act." The court rejected the view that Hanshaw had acquired a prescriptive easement, and therefore had to share in the maintenance costs.

We now quote part of the statement of decision:

"57. Long Valley Road, all the way from Indian Springs Road to a point beyond its intersection with Angie Court, has been the subject of various express written offers of dedication to Nevada County. The first [two] offers were recorded . . . on June 20, 1975. True copies of these offers, along with certificates recorded by the County of Nevada which neither accepted nor rejected the offers at that time, were marked as Exhibits 9 and 10 . . . .

"58. True copies of a third express written offer of dedication . . . along with the County' s certificate neither accepting nor rejecting it, both recorded on November 9, 1976 [were marked as exhibit 14] . . .

"59. A true copy of the final map . . . for Wildflower Estates subdivision . . . showing an offer of dedication of a portion of [the road] to public use, and its acceptance by [Nevada County], was [exhibit 32] . . . ."

The statement of decision concludes:

"[T]he offer to dedicate the middle portion of Long Valley Road, adjacent to the Wildflower Estates subdivision as shown on plaintiff's Exhibit 32, was accepted . . . [on] October 4, 1988 'for all public utility purposes and for public access.' It is concluded that said acceptance of the offer of dedication only affected the [Middle] portion of Long Valley Road . . . .

"[L]ong Valley Road became [a] public road to the full extent of the offer of dedication. Except to the extent noted below, it cannot be determined exactly when the road became public, but it is concluded that it did so between 1975 and 2000 by virtue of the recording of the said parcel and subdivision maps each containing offers of dedication, by virtue of the sales of the more than eighty individual lots by deeds referring to the recorded maps, and by virtue of use made by the public during and after said sales."

LVRA timely filed a notice of appeal. The trial court later found Hanshaw was entitled to fees.

## DISCUSSION

### I. *Common law dedication where a statutory dedication fails.*

The Act sets forth rules for acceptance of subdivision road offers. Failure to accept the Northern and Southern offers equated to rejections under the Act. "If the legislative body rejects the offer, it remains open and the legislative body can accept it at any time. [Citations.] A dedication is not effective until the city expressly accepts the offer in the final map." (Curtin, Subdivision Map Act (Cont.Ed.Bar 2002) § 10.23, p. 276; see *id.* at § 10.7, pp. 267–268; 9 Miller & Starr, Cal. Real Estate (3d ed. 2001) Subdivisions, § 25:216, p. 659.) We reject Hanshaw's claim that acceptance of the Middle portion was an implied acceptance of the other portions.

▮ A common law dedication "requires an *intention* on the part of the owner to dedicate, and *acceptance* by the public." (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 120, p. 337.) Historically, an offer could be accepted by public *user*, as well as formal action by a public *entity.* (See *Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 296–298 [130 Cal.Rptr.2d 436] (*Western Aggregates*).) LVRA contends common law dedication theory "is inapposite since this is a case of statutory dedication." We disagree.

▮ The rule is that "an incomplete or defective statutory dedication, or an ineffectual attempt to make a statutory dedication, will, when accepted by the public . . . operate as a common law dedication." (Annot., Imperfect Statutory Dedication—Effect (1928) 63 A.L.R. 667, 667–668.) The California Supreme Court has applied this rule. (*People v. County of Marin* (1894) 103 Cal. 223, 229–230 [37 P. 203]; see *San Francisco S. Co. v. Contra Costa Co.* (1929) 207 Cal. 1, 6 [276 P. 570].) So have we. (*City of Sacramento v. Jensen* (1956) 146 Cal.App.2d 114, 118–119 [303 P.2d 549]; see *Tischauser v. City of Newport Beach* (1964) 225 Cal.App.2d 138, 141–145 [37 Cal.Rptr. 141].) The leading national and California treatises also recite the rule. (1 Elliott, Law of Roads and Streets (4th ed. 1926) Dedication, § 124, pp. 141–142; 4 Tiffany, Law of Real Property (3d ed. 1975) Dedication, § 1105, p. 600; 10 Cal. Real Estate Law & Prac. (2002) Dedication, § 361.01[2], p. 361-6; 26 Cal.Jur.3d (2000) Dedication, § 2, p. 246; 10 Miller & Starr, Cal. Real Estate (3d ed. 2001), § 26.1, p. 4; id., §§ 26.21–26.22, pp. 52–54.)

▮ LVRA points to cases it asserts support the proposition that the Act supplants the common law. For example, *Galeb v. Cupertino Sanitary Dist.* (1964) 227 Cal.App.2d 294 [38 Cal.Rptr. 580] (*Galeb*) involved a sewer system built under a street which had been rejected, but was accepted after

the system was built. (*Id.* at pp. 296–298.) Later, a sanitation district sought to take over the system and the subdivider sued on an inverse condemnation theory. (*Id.* at pp. 299–301.) The relevant passage recites that because the Act applies, "the rules governing statutory rather than common law dedications control the disposition of the issue here presented [citations]." (*Id.* at p. 301.) In the cases cited by *Galeb*, the same point is made. (*McKinney v. Ruderman* (1962) 203 Cal.App.2d 109, 116 [21 Cal.Rptr. 263] (*McKinney*) [offer preceded Act, common law applied]; *Quacchia v. County of Santa Cruz* (1958) 164 Cal.App.2d 770, 771 [331 P.2d 216] [Act applied over common law]; see *County of Orange v. Cole* (1950) 96 Cal.App.2d 163, 169–171 [215 P.2d 41].) *Scott v. City of Del Mar* (1997) 58 Cal.App.4th 1296, 1302 [68 Cal.Rptr.2d 317], cited by LVRA, states "A statutory dedication is effected when, in compliance with the map act then in force, an offer of dedication is accepted by the public agency." This does not imply that when a statutory dedication is not "effected," common law dedication cannot be invoked. LVRA proves only the narrow proposition that a provision of the Act will apply over a contrary common law rule. But where an attempted dedication fails, no provision of the Act supplants the common law.

LVRA also claims the very structure of the Act precludes application of common law dedication principles. We disagree.

The California Supreme Court recently summarized the structure and purpose of the Act in *Gardner v. County of Sonoma* (2003) 29 Cal.4th 990 [129 Cal.Rptr.2d 869, 62 P.3d 103] (*Gardner*), at pages 996–998:

"The [Act] is 'the primary regulatory control' governing the subdivision of real property in California. [Citation.] The Act vests the '[r]egulation and control of the design and improvement of subdivisions' in the legislative bodies of local agencies, which must promulgate ordinances on the subject. [Citation.] The Act generally requires all subdividers of property to design their subdivisions in conformity with applicable general and specific plans and to comply with all of the conditions of applicable local ordinances. [Citation.] (Fn. omitted.)

". . . A local agency will approve a . . . map only after extensive review of the proposed subdivision and consideration of such matters as the property's suitability for development, the adequacy of roads, sewer, drainage, and other services. . . .

"By generally requiring local review and approval of all proposed subdivisions, the Act aims to 'control the design of subdivisions for the benefit of adjacent landowners, prospective purchasers and the public in general.' [Citation.] More specifically, the Act seeks 'to encourage and facilitate

orderly community development, coordinate planning with the community pattern established by local authorities, and assure proper improvements are made, so that the area does not become an undue burden on the taxpayer.' ''

The Act leaves it to the local agency to determine when the infrastructure comports with local standards, '' 'so that the area does not become an undue burden on the taxpayer.' '' (*Gardner, supra*, 29 Cal.4th at p. 998; see 2 Longtin's Cal. Land Use (2d ed. 1987) Subdivisions, § 6.03, p. 584 (Longtin's).) LVRA argues "It follows that allowing acceptance of dedications to a county by way of public user, improperly circumvents" the Act. We conclude application of the common law rule does not circumvent the purposes of the Act, nor saddle the county with responsibility for a road it does not want to accept.

The Act allows counties to adopt ordinances setting design standards, such as minimum road standards. (Longtin's, *supra*, § 6.43[8], p. 676.) The current Nevada County Code, effective April 11, 1995, after the dedications at issue, contains a provision requiring the board of supervisors to approve a final map "if it conforms to all requirements of the [Act] and this Ordinance. At the time of its actions thereon, the Board shall accept, reject, or accept subject to improvement any or all offers of dedication of streets and other easements." (Nev. County Code, ch. L-IV, § 2.18(D)(3); see *id.*, § 2.19(E)(1–2); *id.*, ch. L-XVII [establishing road standards].) Based on the trial testimony, we assume similar road standards had to be met if there was to be a chance the county would accept the road.

We accept LVRA's point that the Act ensures subdivisions have adequate roads. But we see nothing in the legislative purpose of ensuring adequate roads that would be impaired by a common law dedication. Moreover, given the long-standing nature of the rule that a failed statutory dedication may still result in a common law dedication, LVRA's assumption that the Act would be impaired by the common law is undermined when we consider that the Legislature, which is presumed to know the law (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1106–1107 [1 Cal.Rptr.2d 222]), failed to explicitly abrogate the common law rule.

■ Contrary to LVRA's assumption, a common law dedication does not result in public liability for road maintenance or damages caused by poor maintenance. Acceptance by user does not mean the road becomes a county highway. (Sts. & Hy. Code, § 941 [as amended to abrogate *Union Transp. Co. v. Sacramento County* (1954) 42 Cal.2d 235 [267 P.2d 10]]; see *Re-Open Rambla, Inc. v. Board of Supervisors* (1995) 39 Cal.App.4th 1499, 1506–1507 [46 Cal.Rptr.2d 822]; 9 Miller & Starr, *supra*, § 25:216, p. 660.) "Although a road is a 'public street' and subject to 'public control,' it need not necessarily

be maintained by the local governing entity. All roads over which the public has right to travel, whether express or prescriptive, are 'public' roads. 'Public' roads, however, are not 'county' roads until accepted as such by appropriate resolution of the board of supervisors. [Citations.] The general rule is that a county may not use county road funds for maintaining 'public' roads other than 'county' roads. [Citations.] Accordingly, a county has no statutory duty to maintain public roads that have not been accepted into the county highway system by resolution of the board of supervisors." (*County Responsibility for Public Roads*, 61 Ops.Cal.Atty.Gen. 466, 468 (1978); see *County Roads*, 45 Ops.Cal.Atty.Gen. 98, 100 (1965) [": 'Private' roads over which the public has the right to travel, whether express or prescriptive, are 'public' roads . . . . But 'public' roads are not 'county' roads . . . until they are accepted as such by appropriate resolution"]; *Copeland v. City of Oakland* (1993) 19 Cal.App.4th 717, 722 [23 Cal.Rptr.2d 719] [no liability for road until dedication is unconditionally accepted by public entity].)

In this case only the Middle portion of the road has been explicitly accepted *by the County*. Concluding that the other two parts have been accepted *by the public* does not cast any maintenance or liability burden on the County. As just explained, a "public" road is not the same as a "county" road. Further, given that the County accepted the *Middle* part of the road, it would seem that providing some public access to that portion of the road serves the public benefit, as Hanshaw suggests.

■ There is some authority that on cursory review might appear to favor LVRA's position. In *Mikels v. Rager* (1991) 232 Cal.App.3d 334 [284 Cal.Rptr. 87], the issue was whether an offer to dedicate a road, *conditionally accepted pending improvement up to county standards*, created an easement. (*Id.* at pp. 351–352.) The court rejected this claim, "not because we believe acceptance into the public road system is dispositive, but because the city's qualified acceptance of the offer of dedication did not result in a completed dedication of a public easement." (*Id.* at p. 353.) The court pointed out that the common law contract rule that a qualified acceptance is equivalent to a rejection and counteroffer had been modified by the Act, which makes offers to dedicate irrevocable, with exceptions not here relevant. "A qualified acceptance results in an outstanding offer of dedication, which has not been revoked by operation of law and which the public entity may accept upon its conditions of acceptance being met. *Until the offer of dedication is unconditionally accepted, no public interest is created.*" (*Id.* at p. 354, italics added.) Nothing in this passage impairs our analysis. The case does not discuss common law dedication. Cases are not authority for propositions not considered. (*McDowell & Craig v. City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].) In context, the last quotation refers to rights under the Act, and does not address common law rights. To the extent the passage might be read otherwise, we eschew such interpretation.

In *Hays v. Vanek* (1989) 217 Cal.App.3d 271 [266 Cal.Rptr. 856], subdivision residents asked a county to build a road connecting to a highway. "It was suggested that the entire stretch could then be made part of the County road system. The County refused the request but indicated that such a connector could be built and the entire road accepted if the existing subdivision road was improved so that it met County standards. Plaintiffs suggest this evidence demonstrates any implied offer of dedication by [the developer] was rejected by the County. [¶] The fact that an offer of dedication was rejected by the County because the . . . road did not meet County standards does not necessarily mean that the road was not a 'public' road." (*Id.* at pp. 283–284.) "[T]he fact that the County refused to accept [the road] as a county road—thus imposing responsibilities for maintenance on the County—is not inconsistent with its status as a 'public' road." (*Id.* at p. 284.) The same is true here.

█ In the reply brief LVRA emphasizes that the parcels were burdened by private road maintenance agreements. We fail to see the relevance of this point. Private road agreements may be used to maintain public roads that have not been accepted into a county road system. (Longtin's, *supra*, § 6.43[2], p. 666 ["approval may be conditioned on the agreement of the association of subdivision parcel owners to maintain the road"].) LVRA's point that the owners and developers had "an express expectation that the road remain private" collapses when it is recalled that the County could accept the other dedications tomorrow, indisputably making the road public. LVRA's point that the County is not a party and should not be forced to accept (by judicial decree) roads it has declined to accept is similarly unavailing. It is not being saddled with any liability, as we have explained.

## II. *Facts showing a common law dedication.*

Having concluded that the trial court applied the proper legal test, we must address LVRA's contention that no substantial evidence supports the finding of a common law dedication. In doing so, we apply the normal standard of review over evidentiary questions, that is, we "must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is . . . to be resolved in favor of the finding." (*Bancroft-Whitney Co. v. McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157].)

An explicit offer of dedication was made. (See *Brumbaugh v. County of Imperial* (1982) 134 Cal.App.3d 556, 562 [184 Cal.Rptr. 11].) Although it was accepted in a different manner than anticipated by the offeror, that does not mean this is a case of *implied* dedication. (See *Western Aggregates,*

*supra,* 101 Cal.App.4th at p. 298 ["Congress made an *actual* offer of dedication . . . . It is the *acceptance* which, when not done by formal governmental action, may be implied" by public user].)

There was an intent to dedicate the road to public use. Not only does this flow from the fact of an attempted statutory dedication (*Hays v. Vanek, supra,* 217 Cal.App.3d at pp. 281–284 [developer's inclusion of road on maps, coupled with parcel sales and use as a road, common law dedication]; *Gunn v. Fontes* (1957) 148 Cal.App.2d 351, 352–353 [306 P.2d 928]), but Boots Rusk, one of the developers, so testified at trial.

■ Under the *implied* public dedication doctrine, where proof is by "adverse use" the proponent of access must show "various groups of persons have used the land," rather than "a limited and definable number of persons," in which case there is only "a personal easement but not dedication to the public." (*Gion v. City of Santa Cruz* (1970) 2 Cal.3d 29, 39 [84 Cal.Rptr. 162, 465 P.2d 50] (*Gion*).) In such cases, where an intent to dedicate is implied as a legal fiction from the nature of public usage, the caselaw requires a high standard of usage, lest private property rights be too easily diminished. "The use must be substantial, diverse, and sufficient, considering all the circumstances, to convey to the owner notice that the public is using the passage as if it had a right so to do." (*Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, 826, fn. 7 [93 Cal.Rptr.2d 193] (*Friends*).) But here we have a case of an explicit dedication, with an acceptance shown by public user. In such cases, there is no need to satisfy the same burden as in cases dependent on adverse usage. (See *Western Aggregates, supra,* 101 Cal.App.4th at pp. 296–297.)

"The filing of a subdivision map delineating a street thereon is an offer to dedicate the land identified by such delineation to street purposes. [Citations.] Use of the land so identified by the public for such purposes over a reasonable period of time constitutes an acceptance of the offer so made [citations], without any formal action in relation thereto by governmental authority [citations] and, if it precedes revocation of the offer [citation], the dedication forthwith becomes effectual and irrevocable." (*McKinney, supra,* 203 Cal.App.2d at pp. 115–116, fn. omitted.)

■ The trial court found over 80 lots were sold under subdivision maps which contemplated county acceptance of the road, and that the road was used freely to access the parcels by all who had need to access them. Although the filing of the map itself may only be an offer to dedicate (*Richards v. County of Colusa* (1961) 195 Cal.App.2d 803, 806 [16 Cal.Rptr. 232]; *Larkey v. City of Los Angeles* (1925) 70 Cal.App. 635, 638 [233 P. 991]), where subdivision lots are sold and the public uses the land, acceptance is complete. (*County of Inyo v. Given* (1920) 183 Cal. 415, 419–420

[191 P. 688]. Cf. *Ratchford v. County of Sonoma* (1972) 22 Cal.App.3d 1056, 1071, fn. 7, [99 Cal.Rptr. 887] [no evidence of public user after dedication offer].)

To the extent LVRA argues the judgment exceeds the proven public usage and thereby grants an overly large "easement," we reply that LVRA has conflated easement and dedication principles. The road is a public road, therefore Hanshaw can use it to access the properties to the north.

LVRA argues that "the only persons with any purpose to use [the road] were business invitees interested in purchasing property[,] . . . real estate brokers interested in selling property[,] . . . and individuals providing trade services to properties on [the road.] The general public (i.e., non-guest or non-invitees) had no purpose to use [the road] since it is a dead-end road to nowhere except the homes on [it.]" This concedes the road was used by all members of the public who had reason to use it, and therefore cuts against LVRA.

■ LVRA's complaint about the scope of the rights of the public in the road is based on a misapprehension about the basis of the judgment. LVRA points to cases involving *implied dedications* where there was some question about what, exactly, was dedicated. For example, in *Burch v. Gombos* (2000) 82 Cal.App.4th 352 [98 Cal.Rptr.2d 119], the public had adversely used the road for recreational purposes for more than five years (before the effective date of Civil Code section 1009) but there was a question about whether this use would allow use of the road for commercial logging. The court concluded that resolution of that question would be resolved by application of the prescriptive easement rule that the scope of a prescriptive easement is delimited by the nature of the adverse use. (*Id.* at pp. 361–363; see *Connolly v. McDermott* (1984) 162 Cal.App.3d 973, 977 [208 Cal.Rptr. 796].) In this case, there is an explicit dedication of the road for "public utility purposes and for public access," and principles applicable to prescriptive easements do not apply. Once the trial court found that the dedication had been accepted by user, its scope was what was contained in the written offer, namely, a public access road. (See *Santa Ana v. Santa Ana Val. Irr. Co.* (1912) 163 Cal. 211, 219 [124 P. 847] [use of part of offered road is an acceptance of entire dedication]; *Richardson v. O'Hanrahan* (1927) 83 Cal-.App. 415, 423 [256 P. 1103] [same].) "If a road is involved, the litigants must show that it was used as if it were a public road." (*Gion, supra,* 2 Cal.3d at p. 39.) This road was used as a public road by all " ' "who [had] occasion to travel over" ' " it. (*Western Aggregates, supra,* 101 Cal.App.4th at p. 297.)

III. *Civil Code section 1009.*

LVRA contends Civil Code section 1009 prevents use of a common law dedication theory. As LVRA points out, we must "interpret the statute as a whole, so as to make sense of the entire statutory scheme." (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1135 [90 Cal.Rptr.2d 804, 988 P.2d 1083].)

We quote part of the statute, with portions italicized:

"(a) The Legislature finds that:

"(1) It is in the best interests of the state to encourage owners of private real property to continue to make their lands available for *public recreational use* to supplement opportunities available on tax-supported publicly owned facilities.

"(2) Owners of private real property are confronted with the threat of loss of rights in their property if they allow or continue to allow members of the public to use, enjoy or pass over their property for *recreational purposes.*

"(3) The stability and marketability of record titles is clouded by *such public use,* thereby compelling the owner to exclude the public from his property.

"(b) Regardless of whether or not a private owner of real property has recorded a notice of consent to use of any particular property . . . except as otherwise provided in subdivision (d), *no use of such property by the public* . . . . shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use, made by the owner thereof in the manner prescribed in subdivision (c) of this section, which has been accepted by the . . . public body to which the offer of dedication was made, in the manner set forth in subdivision (c).

"(c) In addition to any procedure authorized by law and not prohibited by this section, an irrevocable offer of dedication may be made in the manner prescribed in Section 7050 of the Government Code . . . and may be accepted or terminated, in the manner prescribed in that section, by the [relevant public body.]" (Stats. 1971, ch. 941, § 2, p. 1846, italics added.)

Civil Code section 1009 involves the inability to establish a public road by *public recreational uses* of private property. As we explained in *Friends, supra,* 78 Cal.App.4th at pages 822–824, that statute was enacted to limit the scope of *Gion, supra,* 2 Cal.3d 29, which had found an implied dedication of

shoreline access for recreational purposes. (See also *Bustillos v. Murphy* (2002) 96 Cal.App.4th 1277 [117 Cal.Rptr.2d 895].) The italicized portions indicate the purpose of the statute is to allow owners to open land for *recreational use* without fear of losing land due to public user. LVRA cites no cases construing Civil Code section 1009 as applying to nonrecreational use of land. And as LVRA itself notes, the public does not have the right to cross Angie Court to get to Rex Reservoir. Therefore, the road cannot readily be used for recreation.

Further, Civil Code section 1009, subdivision (c) provides that "In addition to any procedure authorized by law and not prohibited by this section," offers of dedication may be accepted by public entities. The trial court concluded that because the common law provides for dedications to be accepted by public user, the Legislature intended "to allow methods of acceptances of written offers of dedication recognized at common law prior to enactment to continue. Such methods included acceptance of written offers of dedication by public user." We agree.

LVRA points to Civil Code section 1009, subdivision (b), which partly provides "Regardless of whether or not a private owner of real property has recorded a notice of consent to use of any particular property . . . except as otherwise provided in subdivision (d), *no use of such property by the public* after the effective date of this section shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use, made by the owner thereof in the manner prescribed in subdivision (c) of this section, which has been accepted by the county, city, or other public body . . . ." (Italics added.)

LVRA argues this applies to all property. However, given that the statute speaks to recreational use of property, we interpret "use of such property" to refer to "lands available for *public recreational use*" (Civ. Code, § 1009, subd. (a)(1)), "property for *recreational purposes*" (*id.*, subd. (a)(2)), and "*such public use*" (*id.*, subd. (a)(3)), as those phrases are used earlier in the statute. Nothing in the text suggests a purpose to prevent all nonstatutory dedications of property and LVRA offers no policy reason why the Legislature would want the statute to apply outside the recreational-use arena.

## IV. *Attorney Fees.*

The trial court awarded Hanshaw some of his fees on a private attorney general theory, but reduced the fee claim by the amount spent protecting Hanshaw's "private" property interests. LVRA contends Hanshaw was not

entitled to any fees because of his personal stake in the controversy. (See *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1667 [39 Cal.Rptr.2d 189].)

 Hanshaw replies that LVRA failed to appeal from the postjudgment order following the hearing on fees, pointing out that the statement of decision deferred the "issue of an award of attorney's fees" to a postjudgment proceeding. We agree with Hanshaw that on these procedural facts, LVRA was obliged to lodge a notice of appeal from the subsequently decided issue of entitlement and amount of fees, and its failure to do so bars review of the fee award. (*DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43–44 [99 Cal.Rptr.2d 366].)

## DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Raye, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 19, 2004.

## APPENDIX