[No. C054915. Third Dist. June 9, 2008.]

ZORA M. BIAGINI, Plaintiff, Cross-defendant and Appellant, v. KATHIE BECKHAM et al., Defendants, Cross-complainants and Respondents.

COUNSEL

Haley & Bilheimer, Allan S. Haley, John Bilheimer; and Patrick Henry Dwyer for Plaintiff, Cross-defendant and Appellant.

King G. McPherson for Defendants, Cross-complainants and Respondents.

OPINION

**ROBIE, J.**—This action concerns a dispute over a road known as King Way that runs over property owned by defendants Kathie and Joe Beckham in Nevada County. The dispute arose when plaintiff Zora M. Biagini, who owns property adjacent to the Beckhams, cut down trees and other vegetation on the Beckhams' property near the road. Biagini sought injunctive relief against the Beckhams and the Beckhams cross-complained to quiet title and for damages for trespass. Biagini asserted she had the right to cut vegetation on the Beckhams' property because King Way had become a public road by virtue of public use of the road following the Beckhams' offer to dedicate the road to Nevada County. The trial court disagreed, finding the Beckhams had revoked their offer of dedication before it was accepted by public use of the roadway, although the offer remained open for Nevada County to accept formally. As a result of this finding (and another finding that Biagini did not have a prescriptive easement), the court found Biagini "had no right to trim or destroy trees and vegetation" on the Beckhams' property and held her liable for $4,296.02 in damages to the Beckhams for the trees she had cut down.

On appeal, Biagini contends the trial court erred in finding there was insufficient public use of King Way to constitute acceptance of the Beckhams' offer of dedication. She also contends the trial court erred in determining that a statutory offer of dedication such as the one the Beckhams made can be revoked as to the public at large under common law principles. She makes some further arguments as well that rest on the validity of the previous two.

As we will explain, we find no error. The trial court was correct that the public use of King Way shown by Biagini was not sufficient to constitute implied acceptance of the Beckhams' statutory offer to dedicate that road for public use, although we do not agree with the trial court's reason for reaching that result. The trial court concluded the nature and duration of the public use shown was insufficient to constitute acceptance of the offer of dedication. We conclude otherwise; however, we also conclude that, because the use shown was within the scope of express private easements that Biagini and another

adjacent landowner hold over King Way, there is no basis for concluding that that use amounted to acceptance by the public at large of the offer of dedication.

■ We also conclude that the trial court was correct in determining that a statutory offer of dedication may be revoked by the offeror to preclude later, implicit acceptance by public use, even though the offer must remain open as to the public entity to which it was made under the provisions of the Subdivision Map Act.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

To understand the present dispute, it is helpful to understand some of the history of the properties at issue here. Those properties are depicted on a map that was admitted into evidence as plaintiff's exhibit 3, a copy of which is appended to this opinion.[2]

From what we can determine, the ownership and makeup of these properties as of 1976 was as follows: The property the Beckhams now own (labeled "BECKHAM" on the appended map) was the southern part of a parcel known as the Grover Cleveland Quartz Lode Mining Claim, or lot No. 100, which was owned by someone named McLeary. (The northern part of lot No. 100, only part of which is depicted on the appended map, is labeled "JIANNINO" on the map.) The property Biagini now owns (labeled "BIAGINI" on the appended map) was the northern part of a larger parcel that lay to the south and east of lot No. 100. (The southern part of that parcel is labeled "KING" on the map.) To the north of this larger parcel (and to the east of the northern part of lot No. 100) lay property that was owned by Theodore and Betty Swartz. (Only part of this property, which is labeled "SWARTZ/RUNION" on the appended map, is depicted on the map.)

In February 1977, the parcel south and east of lot No. 100 was subdivided into two parcels: a northern parcel (labeled "BIAGINI" on the appended map; hereafter referred to as the Biagini parcel) and a southern parcel (labeled "KING" on the appended map; hereafter referred to as the King parcel). At that time, access between the Biagini parcel and Allison Ranch Road (which lies to the west of the properties) was to be provided by a curved driveway that ran from the south boundary of the Biagini parcel to a point where the King parcel bordered lot No. 100, and from there over an existing right-of-way to Allison Ranch Road. That driveway access is depicted on the

---

[1] Government Code section 66410 et seq.

[2] We have added the labels "JIANNINO" and "SWARTZ/RUNION" in the top portion of the appended map to assist in understanding the history of the properties.

appended map; it does not appear, however, that it was ever used. (No express easement for that driveway access was included in later conveyances of the Biagini parcel.)

Sometime after 1977, ownership of the Biagini parcel and lot No. 100 came into the hands of Sharon King. In June 1999, King deeded to the Swartzes a 20-foot-wide roadway easement over the southern part of lot No. 100 to provide access from their property to Allison Ranch Road. This roadway was known, or came to be known, as King Way.

In July 1999, King deeded the Biagini parcel to Ray and Angela Fackrell along with the same easement over lot No. 100 she had deeded to the Swartzes. At this time, two driveways extended from King Way onto the Biagini parcel near the north end of that parcel. (Those driveways are partially depicted on the appended map.) As it was identical to the easement King granted the Swartzes, the easement King granted the Fackrells did not describe any part of the two driveways onto the Biagini parcel that lay on lot No. 100. Nevertheless, there appears to have been no dispute that the Fackrells' easement across lot No. 100 included the right to cross all the way to the Biagini parcel.

At the same time she gave the Swartzes and the Fackrells easements across lot No. 100, King entered into and recorded a road maintenance agreement with the Swartzes and the Fackrells governing the "private street" running over the easement on lot No. 100, i.e., King Way.

In April 2000, King deeded lot No. 100 to the Beckhams. At that time, as it ran across lot No. 100, King Way was about 10 to 12 feet wide.

In December 2000, the Swartzes deeded their property to Daren and Susanne Runion, along with the easement across lot No. 100.

In 2001, the Beckhams undertook to divide lot No. 100 into two parcels: a northern parcel that they would sell to Michael and Kathleen Jiannino (labeled "JIANNINO" on the appended map; hereafter referred to as the Jiannino parcel) and a southern parcel that they would retain for themselves (labeled "BECKHAM" on the appended map; hereafter referred to as the Beckham parcel). To accomplish this division, the Beckhams recorded a parcel map for a lot line adjustment that depicted a 50-foot-wide right-of-way over the Beckham parcel to the Jiannino parcel, providing access from the Jiannino parcel to Allison Ranch Road. This right-of-way corresponded generally, though not exactly, with the easement over King Way that King had previously granted to the Swartzes and the Fackrells. As particularly relevant here, the 50-foot-wide right-of-way abuts about half of the western

boundary of the Biagini parcel starting with the northwest corner of that parcel, whereas the actual roadway on the property lies entirely on the Beckham parcel. (See the appended map.)

At the same time they recorded the parcel map, the Beckhams also recorded an "Offer of Dedication" that offered to dedicate to Nevada County "[f]or ingress, egress, road construction and road maintenance purposes" a road purportedly designated on the parcel map as "QUEENS LANE." Although the label "QUEENS LANE" does not appear on the parcel map, it appears undisputed that this was an offer to dedicate for public use the 50-foot-wide right-of-way shown on the parcel map.

As part of the property division, Nevada County required the gravel roadway across the Beckham parcel to be widened to 18 feet. Instead of simply widening the gravel road, however, the Beckhams and the Jianninos agreed to pave it with asphalt and concrete, which they did. Around this same time, the Beckhams and the Jianninos entered into a road maintenance agreement governing the roadway. The agreement referenced both the "deeded easement to King Way" and the parcel map on which the 50-foot-wide roadway offered for dedication to the county was depicted.

In August 2001, the county declined to accept the offer of dedication of the roadway across the Beckham parcel but retained the right to accept that offer at a later date under the provisions of the Subdivision Map Act.

In May 2004, the Beckhams recorded a parcel map to split the Beckham parcel into two parcels (both of which are labeled "BECKHAM" on the appended map). The parcel map depicted the 50-foot-wide right-of-way the Beckhams had offered for dedication in 2001. It also depicted the centerline of the 20-foot-wide easement from the grant deed to the Swartzes in 1999. Around this same time, the Beckhams and the Jianninos signed another road maintenance agreement governing King Way that was essentially identical to the one from 2001.

In June 2004, the Fackrells deeded the Biagini parcel to Biagini, along with the easement across the Beckham parcel. While in the process of purchasing the Biagini parcel, Biagini obtained from the Fackrells' real estate agent a copy of the parcel map from 2001 that depicted the 50-foot-wide right-of-way the Beckhams had offered to dedicate to the county. Biagini did not have the property surveyed before she bought it, however.

When Biagini's fire insurance on the property was canceled less than a month after she purchased the property due to the presence of heavy brush, she began clearing the brush. At one point, when she was clearing brush near

the northwest corner of her property alongside the road, or contemplating the need to do so, the Beckhams came and told her that the property line was 30 feet beyond the east side of the road.

What followed was a running dispute over the property line that led to this action. As Biagini admits, however, "no issues on appeal turn on" the specific facts of that dispute. Suffice it to say, as Biagini does, that she "thought she was within her rights to cut and remove brush and vegetation that she saw as interfering with her right-of-way, and the Beckhams . . . disagreed. In the course of logging trees on her property, she also had her forester remove two trees next to her lower driveway . . . . Without having them surveyed, she believed they were not on the Beckhams' property . . . . It turned out one of the trees was right on the property line, and the other was entirely on the Beckhams' property. It was this conflict over brush and tree removal that fueled this litigation." During the course of this dispute, the Beckhams erected a fence along the property line between their parcel and Biagini's parcel.

In August 2004, Biagini sought a civil harassment restraining order against Joe Beckham. At that time, the parties agreed to have the property lines surveyed. Later, in September 2004, Biagini filed a complaint for injunctive relief, seeking to enjoin the Beckhams from "cross[ing] the road dividing our properties . . . until the property matter is resolved." In their answer filed later that month, the Beckhams asserted as an affirmative defense that they had "the right to defend their property from [Biagini]'s repeated trespasses and vandalism."

In January 2005, the Beckhams filed their first amended cross-complaint for quiet title, trespass, slander of title, malicious mischief, and declaratory relief. In her answer to that cross-complaint, Biagini asserted that the Beckhams' 2001 offer to dedicate King Way to the county had "been accepted by actual use of it being made by members of the public" and that any acts of alleged trespass or malicious mischief were absolutely privileged by virtue of the dedication, which included " 'the right to trim and/or remove trees and vegetation.' "

The case was tried in January and February 2006. Ultimately, the trial court issued its statement of decision and judgment in January 2007. As relevant here, the trial court found the Beckhams had revoked their offer to dedicate King Way before that offer was accepted by public use of the roadway, although the offer remained open for the county to accept formally. As a result of this finding (and another finding that Biagini did not have a prescriptive easement), the court found that Biagini "had no right to trim or destroy trees and vegetation" on the Beckhams' property. The court found

Biagini liable for $4,296.02 in damages to the Beckhams for the trees Biagini had cut down on the Beckhams' property.

Biagini filed a timely notice of appeal.

## DISCUSSION

### I

### *Implied Acceptance of a Statutory Offer of Dedication by Public Use*

"A dedication is the transfer of an interest in real property to a public entity for the public's use." (*Fogarty v. City of Chico* (2007) 148 Cal.App.4th 537, 543 [55 Cal.Rptr.3d 795].) "A statutory dedication is effected when, in compliance with the [version of the Subdivision M]ap [A]ct then in force, an offer of dedication is accepted by the public agency." (*Scott v. City of Del Mar* (1997) 58 Cal.App.4th 1296, 1302 [68 Cal.Rptr.2d 317], citing *Galeb v. Cupertino Sanitary Dist.* (1964) 227 Cal.App.2d 294, 301 [38 Cal.Rptr. 580].) "[A] failure to complete a statutory dedication does not negate the possibility of a common law dedication." (*Hanshaw v. Long Valley Road Assn.* (2004) 116 Cal.App.4th 471, 474 [11 Cal.Rptr.3d 357].) On the contrary, " 'an incomplete . . . statutory dedication . . . will, when accepted by the public . . . operate as a common law dedication.' " (*Id.* at p. 477.)

"The filing of a subdivision map delineating a street thereon is an offer to dedicate the land identified by such delineation to street purposes. [Citations.] Use of the land so identified by the public for such purposes over a reasonable period of time constitutes an acceptance of the offer so made [citations], without any formal action in relation thereto by governmental authority [citations] and, if it precedes revocation of the offer [citation], the dedication forthwith becomes effectual and irrevocable." (*McKinney v. Ruderman* (1962) 203 Cal.App.2d 109, 115–116 [21 Cal.Rptr. 263], fn. omitted.) "[A] dedication, like a contract, consists of an offer and acceptance, and it is settled law that a dedication is not binding until acceptance, proof of which must be unequivocal [citation]. The acceptance may be actual or implied. It is actual when formal acceptance is made by the proper authorities, and implied, when a use has been made of the property by the public for such a length of time as will evidence an intention to accept the dedication." (*County of Inyo v. Given* (1920) 183 Cal. 415, 418 [191 P. 688].)

Biagini contends the trial court erred here in finding there was insufficient public use of King Way to constitute implied acceptance of the Beckhams' offer of dedication. As we will explain, we agree with the trial court that

under the circumstances of this case, no acceptance of the dedication by public use was shown, although our conclusion rests on different reasoning than that of the trial court.

We begin with the standard of review. Biagini asserts that "the insufficiency of evidence to support a finding of dedication is a question of law." (Italics omitted.) We disagree. "Whether there was an implied acceptance [of an offer of dedication is] a question of fact" (*City of Santa Clara v. Ivancovich* (1941) 47 Cal.App.2d 502, 510 [118 P.2d 303]), and we review the trial court's findings of fact under the substantial evidence rule. Of course, where there is no conflict in the relevant evidence, the question is one of law as to which we exercise our independent judgment. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 535 [99 Cal.Rptr.2d 824].)

Here, there was no conflict in the evidence of public use of King Way; the only question is whether the use that was shown by that evidence was sufficient to constitute acceptance of the Beckhams' offer of dedication. Thus, we turn to what the evidence showed.

Biagini testified that in operating three businesses from her home, she sees clients at home approximately 10 times per month. She also testified that she had observed cars coming and going from the Runions several times a day, that the Jianninos "get people in and out occasionally," and that Joe Beckham operates a drafting business from his home.

Susanne Runion testified that in her work as a chiropractor, she began seeing clients in her home beginning in approximately 2003. Over the approximately three years before the time of trial, she saw about 15 to 20 clients per week.

There was no evidence of whether any of Joe Beckham's clients visit his home in connection with his drafting business.

Based on the foregoing evidence, Biagini contends "[t]here was . . . [a] steady flow of traffic in and out, approximately six to twelve trips a day, year in and year out, five days a week, amounting to a minimum of 1,740 to a maximum of 2,740 trips in any given year." In her view, "this was a substantial amount of public usage" that sufficed to show public acceptance of the offer of dedication. The trial court, on the other hand, concluded that "much more intensive use over a much longer period of time is required for a finding of common law dedication." Focusing on the fact that the evidence of use relating to Runion's chiropractic business showed use over no more than "a period spanning only two or three years," the court stated that no case the court had examined had "found a completed dedication for such a short

period of time, no matter [what] type of offer or extent of use. Added to [that] the facts that the dedicated road only serves five parcels, it is a dead-end, use by the general public has been limited, and it is a country road, the evidence is not clear and unequivocal, nor does it even predominate, that a completed common law dedication has occurred based on public use amounting to acceptance."

■ One problem with the trial court's reasoning is that the court appeared to be looking for an intensity of public use of King Way beyond what could reasonably be expected of a road of that type—specifically, a dead end road in a rural area serving only a limited number of parcels. The applicable rule, however, is that "[i]n ascertaining whether or not a highway, park or public place has been accepted by user, the purpose which the way, park or place is fitted or intended to serve must be the standard by which to determine the extent and character of use which constitutes an acceptance." (*Koshland v. Cherry* (1910) 13 Cal.App. 440, 443 [110 P. 143].) Thus, the pertinent question here is not whether greater public use has consistently been shown in other cases where an implied acceptance of an offer of dedication was found, but whether the public use of King Way shown by Biagini was commensurate with what could reasonably be expected of a deadend road in a rural area serving only a limited number of parcels. (See *Hanshaw v. Long Valley Road Assn., supra*, 116 Cal.App.4th at pp. 482, 483 [upholding a finding of implied acceptance where "the road was used freely to access the parcels by all who had need to access them" and "was used by all members of the public who had reason to use it"].) We conclude the public use shown here was commensurate with the nature of the road.

■ As for the duration of the public use shown, we similarly conclude that it does not matter whether the cases the trial court examined all involved longer periods of time. As we have observed, the question in determining whether acceptance has been manifested by public use is whether "a use has been made of the property by the public for such a length of time as will evidence an intention to accept the dedication." (*County of Inyo v. Given, supra*, 183 Cal. at p. 418.) No certain amount of years or even months is necessary to satisfy this standard. As the Supreme Court explained in *Schwerdtle v. County of Placer* (1895) 108 Cal. 589 [41 P. 448], "where . . . actual consent and acquiescence [of the owner to use his land as a highway] can be proved, then the length of time of the public use ceases to be of any importance, because the offer to dedicate, and the acceptance by use, both being shown, the rights of the public have immediately vested." (*Id.* at p. 593.) As long as the length of time of public use evidences an intention to accept the dedication, that is all the law requires.

The foregoing would appear to lead to the conclusion that the evidence of the use of King Way by Susanne Runion's clients and Biagini's clients was

sufficient to evidence public acceptance of the Beckhams' offer to dedicate King Way for public use. There is one more relevant factor, however, that must be considered. On its way to finding that the evidence of public use was not sufficient to constitute implied acceptance of the offer of dedication, the trial court observed that "[t]he use shown [wa]s that of two property owners and their clientele, which use is consistent with their ownership of a private easement." This observation raises the following question: When a right-of-way offered for dedication to the public is also subject to one or more private easements, does use of the road have to exceed the scope of use permissible under those easements to constitute implied acceptance of the offer of dedication? Stated another way, if the use of King Way by Susanne Runion's and Biagini's clients was within the scope of the easements held by Biagini and the Runions, can an implied acceptance of the offer of dedication nonetheless be found based on that use?

The answers to those questions lie in the foundational principles underlying the doctrine of common law dedication. "The common law doctrine of dedication rests on public convenience and has been sanctioned by the experience of ages. It is based on public policy and good faith, in that, while securing to the public only such rights as it has honestly enjoyed or learned to depend on, it takes from the landowner nothing that was not intended to be given. The doctrine of dedication is sometimes seen as analogous, founded on, or resting largely on, grounds of estoppel . . . ." (26 C.J.S. (2001) Dedication, § 2, p. 280, fns. omitted.)

██ Long ago, our Supreme Court explained that "[d]edication is but a phase of estoppel. . . . 'It does not operate as a grant, but is in the nature of an estoppel *in pais*, which debars the owner from recovering it back.' " (*Prescott v. Edwards* (1897) 117 Cal. 298, 303 [49 P. 178].) "A common-law dedication operates against the dedicator by estoppel, and this estoppel may be invoked by or on behalf of the public at large." (*Sussman v. San Luis Obispo County* (1899) 126 Cal. 536, 539 [59 P. 24].) Indeed, "dedication is a matter purely between the owner and the public. There is no such thing as a dedication between the owner and individuals. The public must be a party to every dedication." (*Prescott v. Edwards, supra,* 117 Cal. at p. 301.) Thus, where the public at large relies on an offer to dedicate land to public use to such an extent that it would be unfair under principles of estoppel to deny the public continued use of the land for that purpose, implied acceptance of the offer of dedication will be found. In this vein, our Supreme Court has stated that the duration of public use necessary to establish implied acceptance of an offer of dedication " 'ought to be such length of time that the public accommodation . . . will be affected materially by an interruption of the enjoyment.' " (*San Francisco v. Canavan* (1872) 42 Cal. 541, 548.)

■ Applying these underlying principles to the issue before us leads to the conclusion that the trial court reached the right conclusion (albeit for the wrong reason) when it found that the use of King Way shown by Biagini was not sufficient to establish implied acceptance of the Beckhams' offer of dedication. It is undisputed that Biagini and the Runions both had express private easements over King Way at all times that their business invitees used the road to access their properties. Additionally, there appears no basis for concluding that the use of King Way by those invitees was beyond the scope of the private easements, which allowed for "ingress and egress" to the Biagini and Swartz/Runion parcels.[3] Inasmuch as these easements will continue to allow for the same access to and from the Biagini and Swartz/Runion parcels that Biagini offered evidence of, regardless of the disposition of the Beckhams' offer of dedication, the conclusion that an implied acceptance of the Beckhams' offer of dedication never occurred results in no injustice or unfairness, and thus the fundamental basis for finding such an acceptance does not exist.

■ Our Supreme Court has explained that "when one lays out a tract of land into lots and streets and sells the lots by reference to a map which exhibits the lots and streets as they lie with relation to each other, the purchasers of such lots have a private easement in the streets opposite their respective lots, for ingress and egress and for any use proper to a private way, and . . . this private easement is entirely independent of the fact of dedication to public use, and is a private appurtenance to the lots, of which the owners cannot be divested except by due process of law." (*Danielson v. Sykes* (1910) 157 Cal. 686, 689 [109 P. 87].) Although not directly applicable here, this principle supports our conclusion inasmuch as it confirms that a private easement over a roadway is an entirely different matter than a dedication of that roadway to use by the public in general. ■ Where, as here, the use

---

[3] In her reply brief, Biagini argues that "commercial uses" are beyond the scope of the "residential easements" that she and the Runions possess. The cases she cites in support of this proposition do not support it. *Bartholomew v. Staheli* (1948) 86 Cal.App.2d 844 [195 P.2d 824] involved an injunction that prohibited the defendants "from overburdening their easement to use their private right of way over plaintiffs' land by inviting greatly increased travel of vehicles by means of which members and customers of defendants' nudist colony, resort and store were encouraged to patronize those enterprises conducted for pecuniary profit." (*Id.* at p. 846.) The appellate court upheld that injunction, pointing to the absence of any evidence that the defendants "had acquired an adverse right to enjoy their easement with its greatly increased burden and unreasonable enlargement." (*Id.* at p. 849.) In *Keeler v. Haky* (1958) 160 Cal.App.2d 471 [325 P.2d 648], the appellate court held that an easement to "pass and repass" along a private road did not give the owners of the dominant tenement the right to use the road as a permanent parking lot, thereby excluding the owners of the servient tenement from using the road. (*Id.* at pp. 473–477.) Neither of these cases supports Biagini's suggestion that the rather limited use of King Way made by her clients and Susanne Runion's clients was beyond the scope of their easements for ingress and egress to their parcels.

of property is consistent with a private easement, there is no basis for finding an implied acceptance of an offer of dedication by public use.

For the foregoing reasons, we conclude the trial court did not err in determining there was insufficient public use of King Way to constitute implied acceptance of the Beckhams' offer of dedication.

## II

### *Common Law Revocation of a Statutory Offer of Dedication*

The trial court found that the Beckhams "revoked their offer of dedication to the public at large" by "object[ing] to [Biagini]'s use of the property pre-litigation, the building of the fence, and contesting [Biagini]'s right to use their property in this litigation." Consistent with this finding, the court ordered that "[c]ontinued public use of [the] right-of-way now known as King Way shall not result in King Way becoming a public right-of-way by virtue of said express offer of dedication."

On appeal, Biagini does not raise any issue about whether the evidence was sufficient to support a finding of a revocation of the offer of dedication under common law principles. Instead, she contends the trial court erred because, in her view, there can be no common law revocation of a statutory offer of dedication.

 "There are two kinds of dedications of private land to public use: those made under controlling principles of common law, and those made from compliance with statute." (26 Cal.Jur.3d (2008) Dedication, § 2, p. 182, fn. omitted.) As we have seen, however, the two types of dedication do not always operate independently of each other. For example, an incomplete statutory dedication can be accepted under common law principles when the offer of dedication is impliedly accepted by public use. (*Hanshaw v. Long Valley Road Assn., supra,* 116 Cal.App.4th at p. 477.)

Biagini asserts that, even though a statutory offer of dedication can be accepted under common law principles, a statutory offer of dedication cannot be *revoked* under common law principles, so as to prevent implied acceptance by public use, because "[t]he Legislature . . . abrogated all common-law means of revoking statutory offers of dedication, but left intact the common-law means of accepting them." We disagree. It is true that "a provision of the [Subdivision Map] Act [relating to dedications] will apply over a contrary common law rule." (*Hanshaw v. Long Valley Road Assn., supra,* 116 Cal.App.4th at p. 478.) As we will explain, however, the provision of the act

on which Biagini's argument rests is not contrary to the common law rule of revocation the trial court applied here.

At common law, revocation of an offer of dedication could "be evidenced in various acts inconsistent with the use for which it is claimed the land was dedicated." (*Myers v. City of Oceanside* (1907) 7 Cal.App. 87, 92 [93 P. 686].) In part, however, the provisions of the Subdivision Map Act are contrary to this rule. Under the act, at the time a legislative body "approves a final map," it must "also accept, accept subject to improvement, or reject any offer of dedication." (Gov. Code, § 66477.1, subd. (a).) If the legislative body rejects an offer to dedicate land for use as a street (or certain other uses), "the offer of dedication shall remain open and the legislative body may by resolution at any later date, and without further action by the subdivider, rescind its action and accept and open the street[] . . . for public use . . . ." (*Id.*, § 66477.2, subd. (a).)

In *Stump v. Cornell Construction Co.* (1946) 29 Cal.2d 448 [175 P.2d 510], a final subdivision map, approved in August 1941, depicted an " 'easement to City of Los Angeles for future alley and public utility purposes.' " (*Id.* at p. 449.) The city did not formally accept the offer of dedication until 1944; in December 1941, however, the subdivider sold the property by means of a deed that did not specifically refer to the future alley. (*Id.* at p. 450.) Later owners of the property relied on the common law principle that "a conveyance without reservation amounts to a revocation of an offer for dedication," but the Supreme Court held that "the provisions of th[e Subdivision Map A]ct clearly indicate an intention to abrogate the common law rule whereby an offer to dedicate might be impliedly revoked by a conveyance without reservation." (*Stump*, at p. 451.) In particular, the court relied on the provision, now embodied in Government Code section 66477.2, subdivision (a), that an offer to dedicate a street remains open indefinitely for the legislative body to accept by resolution at any later date. (*Stump*, at pp. 450–451.)

In *County of Orange v. Cole* (1950) 96 Cal.App.2d 163 [215 P.2d 41], the appellate court extended the reasoning in *Stump* to an express revocation of an offer of dedication. (*County of Orange*, at pp. 170–171.)

Biagini relies on *Stump* and *County of Orange* for the proposition that the Subdivision Map Act "abrogated all common-law means of revoking statutory offers of dedication," such that a statutory offer of dedication must remain open indefinitely for formal acceptance by the public entity to which the offer was made *or* for implied acceptance by public use. This proposition does not follow from those cases. Both *Stump* and *County of Orange* involved the question of whether the public entity to which the offer of

dedication was made could formally accept the offer under the provision now embodied in Government Code section 66477.2, subdivision (a) notwithstanding a claim that the offer had been revoked, expressly or implicitly, before the formal acceptance occurred. The courts in those cases properly recognized that no such revocation could be deemed operative as to the public entity because the statute (in its current wording) expressly provides that "the offer of dedication shall remain open and the legislative body may [accept the offer] by resolution at any later date . . . ." (Gov. Code, § 66477.2, subd. (a).)

Neither *Stump* nor *County of Orange* answered the question of whether a statutory offer that has to remain open for formal acceptance by the public entity under the provisions of the Subdivision Map Act also has to remain open for implied acceptance by public use, or instead can be revoked as to the public at large under common law principles. The answer to that question, however, can easily be deduced from the terms of the statute on which *Stump* and *County of Orange* were based. As we have noted, the statute requires the offer of dedication to remain open so that "*the legislative body* may [accept the offer] by resolution at any later date . . . ." (Gov. Code, § 66477.2, subd. (a), italics added.) It does *not* require the offer to remain open for acceptance by public use. Since common law principles continue to apply where they are not supplanted by provisions of the act (*Hanshaw v. Long Valley Road Assn., supra*, 116 Cal.App.4th at p. 478), it follows that the Subdivision Map Act does not supplant common law principles governing revocation of offers of dedication so far as those principles apply to acceptance of an offer by public use.

Biagini complains that this conclusion rests on the "fallacy" that a statutory offer of dedication actually involves two offers—the statutory offer to the public entity and a second, common law offer to the public at large, and from this fallacy various "knotty issues" will flow. Biagini's argument rests on a false premise. There are not two offers; there is one offer that can—prior to revocation—be accepted in two ways. If the offeror engages in acts sufficient to revoke the offer under common law principles, then the offer is revoked as to the public at large, such that it cannot be implicitly accepted by further public use. It remains open, however, for formal acceptance by the public entity.[4]

Biagini also argues that Code of Civil Procedure section 771.010, which is referred to in Government Code section 66477.2, compels the conclusion that a statutory offer of dedication cannot be revoked as to the public at large

---

[4] To the extent Biagini purports to question for the first time in her reply brief the evidentiary basis for the trial court's finding that the Beckhams revoked their offer of dedication as to the public at large, that argument comes too late, and we will not address it.

under common law principles. Code of Civil Procedure section 771.010 provides that an offer to dedicate property for public improvement is conclusively presumed not to have been accepted if (1) the offer was made by filing a map only; (2) no acceptance of the offer was made and recorded within 25 years after the map was filed; (3) the real property was not used for the purpose for which the dedication was proposed within 25 years after the map was filed; and (4) the real property was sold to a third person after the map was filed and used as if free of the dedication. Biagini argues that "if use by the public at any time within a twenty-five year period can defeat the revocation of a *statutory* offer of dedication, then there is no right to revoke 'as to the public' before that period has expired." That argument does not follow, however. Code of Civil Procedure section 771.010 simply describes certain conditions under which an offer of dedication made by filing a map will be conclusively presumed not to have been accepted. The statute does not speak to the *revocation* of such an offer, whether as to the public entity to which it was made or the public at large. Thus, public use within the 25-year period does not "defeat the revocation of a *statutory* offer of dedication," as Biagini posits; it merely precludes the party seeking to prove the offer was never accepted from relying on the conclusive presumption provided for in the statute. Accordingly, Code of Civil Procedure section 771.010 has no bearing here.

For the foregoing reasons, we conclude the trial court was correct in determining that a statutory offer of dedication can be revoked as to the public at large, so that it can no longer be accepted by public use, even though the offer must remain open for formal acceptance by the public entity to which the offer was made.

## III

### *Remaining Arguments*

Biagini argues that the Beckhams were estopped from obtaining relief against her for trespass in the area of the dedication because of their offer of dedication. This argument, however, rests on the proposition that the offer of dedication was irrevocable as to the public at large—a proposition we have already rejected. Accordingly, we need not address this argument further.

Biagini also argues that the Beckhams cannot bar her access to the dedicated public right-of-way by means of a fence. However, because we have concluded the trial court was correct in finding there was insufficient public use of King Way to constitute implied acceptance of the Beckhams' offer of dedication, there is no dedicated public right-of-way, and Biagini's argument fails on this basis.

Finally, Biagini argues that the award of damages was erroneous because the trial court doubled the actual damages proved in the case in accordance with "the trespass statutes." Biagini contends this was inappropriate because "[g]iven that there was an irrevocable, express written offer of dedication, then what [she] did in the dedicated area was neither wrongful, nor a trespass." Because we have upheld the trial court's determination that the Beckhams revoked the offer of dedication before it was accepted by public use, the premise for Biagini's challenge to the award of damages fails. As that challenge exhausts Biagini's arguments on appeal, we are left with the conclusion that Biagini has failed to establish any error by the trial court.

## DISPOSITION

The judgment is affirmed. The Beckhams shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

Blease, Acting P. J., and Raye, J., concurred.

## APPENDIX

EXHIBIT MAP

# ZORA BIAGINI

A PORTION OF
SECTION 2, T.15 N., R.8 E., M.D.M.
NEVADA COUNTY, CALIFORNIA
SCALE: 1"=100' DECEMBER 5, 2004

APPENDED MAP