Filed 1/16/19 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| LOREN PROUT, | C076812 |
| Plaintiff, Cross-defendant and Appellant, | (Super. Ct. No. 11CV37909) |
| v. | ORDER MODIFYING OPINION |
| DEPARTMENT OF TRANSPORTATION, | NO CHANGE IN JUDGMENT |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from a judgment of the Superior Court of Calaveras County, Thomas A. Smith, J., Judge.  Affirmed.

Law Offices of Kenneth M. Foley, Kenneth M. Foley for Plaintiff, Cross-defendant and Appellant.

Jeanne Scherer, Chief Counsel, Ardine N. Zazzeron, Assistant Chief Counsel, Daniel E. Muallem, and Joseph P. Carroll for Defendant, Cross-complainant, and Respondent.

THE COURT:

The court on its own motion modifies the opinion filed on December 18, 2018, and ordered published on January 11, 2019, as follows:

1

On page 8, after the sentence ending on line 18 with "filing of the subdivision map," insert the following new paragraph:

Regardless whether traditional or administrative mandamus applies, Prout's failure to pursue such remedy bars his *Nollan* challenge in this inverse condemnation complaint. *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, held that validity of a decision attaching a condition to approval of a subdivision map must be judicially attacked by a timely petition for writ of administrative mandamus (90 days under Gov. Code, § 66499.37). (*Hensler, supra*, at pp. 22, 27.) The reason for a short limitations period to challenge the validity of such land use decisions is to permit and promote sound fiscal planning by state and local governmental entities and give them the alternative of changing a decision for which compensation might be required. (*Id.* at p. 27.) If no such early opportunity were given, and landowners could instead accept the condition and then seek compensation for inverse condemnation years later, meaningful governmental fiscal planning would become impossible. (*Id.* at pp. 27-28.)

This modification does not change the judgment.


BY THE COURT:


        RAYE            , P.J.


        BLEASE          , J.


        HULL            , J.

2

Filed 12/18/18; pub. order 1/11/19 ( see end of opn.) (unmodified version)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| LOREN PROUT,<br><br>      Plaintiff, Cross-defendant and Appellant,<br><br>      v.<br><br>DEPARTMENT OF TRANSPORTATION,<br><br>      Defendant, Cross-complainant and Respondent. | C076812<br><br>(Super. Ct. No. 11CV37909) |

Loren Prout filed an inverse condemnation action, alleging Department of Transportation (Caltrans) violated the Fifth Amendment of the United States Constitution in 2010 by physically occupying without compensation a long, narrow strip of Prout's land fronting State Highway 12, to make highway improvements. The land taken was a 1.31-acre strip, 20 feet wide and about 6,095 feet long. Caltrans cross-complained for breach of contract, promissory estoppel, and specific performance, alleging Prout agreed

1

to dedicate the strip by deed for highway purposes 20 years earlier when he obtained an encroachment permit for a subdivision he was developing. Prout's subdivision map stated the strip of land fronting Highway 12, shown by hash marks on the map, was "IN THE PROCESS OF BEING DEEDED TO CALTRANS FOR HIGHWAY PURPOSES." No deed was signed or recorded.

After a bench trial on the bifurcated issue of liability, the trial court found Caltrans validly accepted the offer of dedication by physically occupying the strip for its highway improvements, and the court awarded specific performance on Caltrans's cross-complaint and ordered Prout to execute a deed.

On appeal, Prout claims the evidence is insufficient to support the trial court's finding that he agreed to dedicate the entire strip of land, as opposed to just a small area needed to connect the subdivision's private road to the state highway. Prout contends that, if dedication of the strip was a condition of the encroachment permit (as claimed by Caltrans), it was an illegal exaction under *Nollan v. California Coastal Commission* (1987) 483 U.S. 825 [97 L.Ed.2d 677] (*Nollan*). Prout also argues Caltrans's 2012 cross-complaint for specific performance of a deed is barred by five-year statutes of limitations for recovery of real property. (Code Civ. Proc., §§ 318-321; unless otherwise indicated, statutory section references that follow are to this Code.)

We conclude Prout's *Nollan* challenge is barred by his failure to file a timely petition for writ of mandamus, and his inverse condemnation claim fails because substantial evidence supports the trial court's finding that Prout made an offer to dedicate the entire strip of land in 1990 and did not revoke the offer before Caltrans accepted it by physically using the strip to make highway improvements in 2010-2011. We explain the cross-complaint is timely.

Accordingly, we affirm the judgment.

FACTS AND PROCEEDINGS

In 1977, Prout -- a licensed real estate broker and land developer -- acquired a 165-acre parcel of land on the north side of State Highway 12 in Calaveras County that

2

he wanted to develop into a project called the Golden Oaks Ranchettes Subdivision.  This was the first project he developed without partners.  He hired civil engineer Roark Weber to prepare tentative and final maps and deal with encroachment issues.  Weber was also hired as agent by the owner (C. Leland Hall) of land on the south side of Highway 12, who wanted an encroachment permit to connect Highway 12 to a private road in his 17 Arabian Ranch Subdivision.  Hall is not party to this lawsuit, and the two subdivisions were unrelated.

In December 1989, Weber, as "agent" for the owners submitted to Caltrans an application for an encroachment permit allowing connections of the private roads to Highway 12.  The application described the work Prout wanted to do within the State's right of way as "Encroachment from private roads to Highway 12, with two-way left-turn pocket . . . ."  Weber's letter to Caltrans said, "We understand Caltrans may require that we provide an easement across parcels 4 and 5 for road purposes" and also promised to provide a legal description and parcel map of the area to be dedicated, which apparently was not done.

On April 3, 1990, Caltrans issued an encroachment permit, granting permission to: "Construct two public road connections to connect two new private roads to Highway 12. Widen roadway, construct two left-turn pockets . . . . *Right of way to 50 feet of centerline along Route 12 and drainage easements to be dedicated by subdivision map for 17 Arabian ranches and Golden Oaks Ranchett[e]s*."  (Italics added.)  The right of way to 50 feet of the center of the highway meant the 20-foot wide strip (1.31 acre) of vacant land was to be dedicated.  The trial court noted Prout sometimes referred to it as 50 feet; a Caltrans engineer testified the reason to require a 50-foot dedication was to give Caltrans "free title" to the center line of the highway.  Prout's work was to be completed by September 30, 1990, but the parties agreed to extend the date to March 31, 1991.

On November 20, 1990, a final subdivision map was recorded for Unit 1 of the subdivision Golden Oaks Ranchettes, creating 18 lots.  The final map states that hash marks represent "AREA IN THE PROCESS OF BEING DEEDED TO CALTRANS FOR HIGHWAY PURPOSES."  The hash marks delineated an area 20-feet wide,

3

parallel to the centerline of Highway 12 and extending a total length of about 2,847 feet -- 599 feet to the west and 2,248 feet to the east of Toreno Way. The subdivision map was prepared and recorded by Weber as Prout's agent and therefore binds Prout (Civ. Code, § 2330). Moreover, Prout himself signed the first page of the map, stating that Prout "consent[ed] to the preparation and recordation of this final map." Prout's signature on the first page also "dedicate[d] to public use any and all easements shown hereon except those easements and right of ways designated hereon as private." Prout testified he just signed whatever was presented to him "to get the ball rolling."

Caltrans argued it believed the dedication of the entire strip was complete when the offer and acceptance was reflected in the recorded subdivision map. A Caltrans MINI-MEMO shows that on October 29, 1990, someone asked, "Did we get dedication of R/W [right of way] 50' from . . . both sides [of] Route 12? See attached Tentative Subdiv. Map dated 8/25/89. And map by Weber Assoc. dated 7-18-89. Also letter from Weber dated 12/27/89. *This was to be dedicated by Map*." (Italics added.) A Caltrans permit engineer testified that, a few years before trial, Caltrans asked him to research the dedication issue. His understanding was that the 1990 memo reflected some sort of confirmation that in order to issue the permit, the dedication by map was to be sufficient.

At trial, Prout testified he believed the area to be dedicated was merely a small area needed to connect the subdivision's private road to the highway, shown with hash marks in "Detail 'A'" of Sheet 2 of 5 of the subdivision map, consisting of about 0.05 of an acre. In a written tentative decision incorporated by reference in the judgment, the trial court expressly found Prout's "testimony in that regard is simply not credible. Detail 'A' is clearly nothing more than a close-up drawing of the area of the intersection of Highway 12 and Toreno Way and provides additional distances and radials that could not be placed in the main drawing [due to lack of space]. There is nothing in the subdivision map to suggest the area to be dedicated to Caltrans is limited to that shown in Detail 'A.' "

On June 11, 1992, a subdivision map was recorded for Unit 2 of the Golden Oaks Ranchettes Subdivision, creating an additional 10 lots, most of which did not front

4

Highway 12. This Unit 2 map, like the Unit 1 map, identified the strip with hash marks as "area in the process of being deeded to Caltrans for highway purposes." And Prout again signed his consent on the first page of the Unit 2 map.

Prout never transferred by deed the 1.31-acre strip of land. He admitted at trial that he has not been assessed or paid property taxes on that strip since the subdivision maps were recorded, and no assessor parcel number has been assigned to that strip of land. All fencing of subdivision lots leaves that strip of land (which has utility poles) on the highway side rather than within the subdivision. Prout has never received payment from Caltrans for its use of the strip.

In 2007, Caltrans began preparations to rehabilitate Highway 12. On September 12, 2007, Caltrans informed Prout by letter that an appraisal would be conducted to determine how much Caltrans would pay Prout for the 1.31-acre strip of land needed to accomplish the highway improvements.

However, in a December 3, 2008, letter to Prout, Caltrans asserted the terms of the April 1990 encroachment permit required that Prout dedicate the 1.31-acre strip of land to Caltrans, and Caltrans would be preparing a deed package for his signature. We disregard e-mails between Caltrans and its attorney, which Caltrans inadvertently disclosed during discovery and which should have been removed from the clerk's transcript after the trial court ruled them inadmissible as privileged attorney-client communications. Prout received the letter but did not make any objection to Caltrans.

In March 2009, Caltrans sent a letter to Prout asking him to sign an attached Grant Deed (which is not attached in the record on appeal).

Prout never signed a deed conveying the strip to Caltrans.

In 2009 or 2010, Caltrans began the highway improvements and physically occupied the strip for that purpose. There is no evidence that Prout revoked the offer or objected at any time before Caltrans physically occupied the strip. The exact nature of the improvements is not clear from the record, but Prout alleged that, "[a]s a direct and necessary result of the construction of the highway, Plaintiff's property was taken from him and is now part of the State Highway system." He alleged on information and belief

5

that, due to Caltrans's construction of the highway, Prout's property "will be continued to be occupied by [Caltrans] from now until the end of time." And Caltrans on appeal states it "widened and improved Highway 12, and used Appellant's dedicated 1.31 acre property as part of Caltrans improvements." However, Prout's attorney in closing argument to the judge said, "[Caltrans] may have wanted to increase the highway, which means they move the [utility] poles. Whatever happens there."

In February 2011, an attorney for Prout wrote to Caltrans demanding compensation for Caltrans's occupation of Prout's land, asserting Prout never deeded or offered to dedicate the land.

Caltrans completed the roadwork in 2011.

In September 2011, Prout filed his complaint in inverse condemnation.

Caltrans filed its cross-complaint for breach of contract, promissory estoppel, and specific performance, alleging Prout accepted the benefit of the Encroachment Permit in 1990 by building connection of private road to public road, yet has refused to finalize the dedication and/or deed process as Caltrans requested in December 2008.

The trial court found the matter of recording a formal deed granting the strip of land to Caltrans "fell through the cracks" between 1990 and 2008, and Prout also most likely forgot that he failed to record a deed until he received Caltrans's 2007 letter about an appraisal, at which point he began questioning the legitimacy of his dedication of the land.

The court ruled Prout's *Nollan* challenge is barred by his failure to seek a writ of traditional mandamus within four years of issuance of the encroachment permit, which is when Caltrans imposed the assertedly illegal exaction. (§§ 343, 1085.) The court rejected Prout's inverse condemnation complaint, because he had no property right to the strip of land at the time of Caltrans's highway project in 2010-2011 and, even assuming he had a property right, it would be inequitable under the doctrines of laches, unclean hands, estoppel, and unjust enrichment, to allow him to recover damages for inverse condemnation of property he was required to convey to Caltrans.

6

As to Caltrans's cross-complaint, the trial court found Prout took no steps to revoke his offer of dedication before Caltrans physically occupied the land to make the road improvements, and Caltrans accepted the offer of dedication when it made the road improvements. A statute requiring the clerk of a legislative body to make a statement of acceptance in a final map (Gov. Code, § 66440) does not apply here, because Caltrans is not a legislative body. Under common law, where there has been an offer to dedicate land to public use, the use by the public that implies acceptance must occur within a reasonable time after the offer is made. What constitutes a reasonable time depends on the circumstances. (*McKinney v. Ruderman* (1962) 203 Cal.App.2d 109 (*McKinney*).) The court said that 25 years is conclusively presumed to be an unreasonable time under section 771.010, but here the court found Caltrans' use of the land 22 years after dedication was within a reasonable time. Additionally, Caltrans accepted the offer of dedication by its December 2008 letter requesting that Prout complete the dedication process by signing a deed.

The trial court entered judgment in favor of Caltrans on Prout's complaint and on Caltrans's cross-complaint for breach of contract and promissory estoppel, and awarded specific performance by ordering Prout to dedicate the 1.31-acre strip of land by deed to Caltrans for highway purposes.

DISCUSSION

I

*The Nollan Challenge Is Time-Barred*

Under *Nollan, supra*, 483 U.S. 825, and its progeny, the government cannot, as a condition for issuance of a development permit, impose a requirement that the landowner dedicate land for public use, unless there is an "essential nexus" between the condition and the projected impact of the proposed development. (*Id*. at pp. 841-842.) Here, it does not appear that the highway needed to be widened because of the subdivision.

The general rule is that, when a government agency conditions its approval of a real property development project on the grant of an easement or other exaction which

7

would otherwise constitute a taking requiring compensation, the property owner must challenge the condition by petition for writ of mandate filed before, or simultaneously with, a complaint for inverse condemnation. (*Uniwill v. City of Los Angeles* (2004) 124 Cal.App.4th 537, 542-543 (*Uniwill*).) Reasons for the rule include that the agency assesses desirability of a project on the assumption that it will not be required to pay compensation, and the rule avoids the burden of compensation when the landowner has already accepted the conditions and benefits of development. (*Id*. at p. 543.)

Prout contends the trial court erred in concluding his *Nollan* challenge was barred by his failure to file a petition for writ of traditional mandamus (§ 1085) within the four-year limitations period of section 343: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." We assume for purposes of this appeal that traditional mandamus rather than administrative mandamus, with its shorter limitations period, applies. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 27 [remedy is administrative mandamus].)

Caltrans's position is that it did indeed impose a requirement of dedication of the 1.31-acre strip as a condition for Prout to obtain the encroachment permit, and therefore the four-year limitations period began to run with the 1990 issuance of the permit and filing of the subdivision map.

Prout argues a *Nollan* challenge was not ripe in 1990 and did not become ripe until he was damaged by Caltrans's physical occupation of the land in 2010. However, Prout cites no supporting authority. To the contrary, a *Nollan* challenge merely calls for the landowner to establish invalidity of the condition the public entity sought to impose, and a landowner cannot challenge a condition "imposed upon the granting of a permit after acquiescence in the condition by either specifically agreeing to the condition or failing to challenge its validity, and accepting the benefits afforded by the permit." (*Rosco Holdings Inc. v. State of California* (1989) 212 Cal.App.3d 642, 654.)

Here, in 1990, Caltrans imposed the condition, Prout accepted it by filing a subdivision map that it was "in the process" of dedicating the land by deed, and Prout accepted the benefit of the permit by connecting his private road to the highway. It

8

would be unfair to allow Prout to accept the benefits of the permit and then raise a *Nollan* challenge more than 20 years later, after Caltrans already accepted the offer and used the strip of land for highway improvements.

Prout says the language that the strip was "in process of being deeded to Caltrans for highway purposes" merely acknowledged that the land was the subject of negotiations between the parties. Prout argues the negotiations were never finalized into an agreement. We disagree with Prout. The language "in the process of being deeded" means negotiations were over, and an agreement had already been reached.

Prout says he was not denied any use of his property in 1990, as title remained in his name. But, as indicated, land may be dedicated by a recorded subdivision map, and here the offer to dedicate as documented on the recorded subdivision map would presumably have interfered with Prout's ownership interest -- even before Caltrans accepted the offer -- had Prout sought to sell his land for a price that included the value of the strip. Moreover, there is no evidence he ever used the strip. He never paid taxes on it and did not fence it in with his subdivision.

Prout cites *Uniwill, supra*, 124 Cal.App.4th at page 543, for the proposition that a demand for an easement after recordation of a tentative tract map is not an "act" requiring judicial action, but is merely a threat. Prout says a threat to take is not an act constituting a taking. (*Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1257 [taking requires an act, and risk of future flooding is not an act].) However, in *Uniwill*, a city representative demanded an easement only *after* the city approved the map and substantial work on the project had been completed. (*Id*. at pp. 543-544.) It was not a requirement imposed by the agency as a condition for the grant of permission to develop the property. Rather, it was merely a threat by a city representative with the power, but not the authority, to issue a final map and certificate of occupancy upon completion of the project in conformity with the government approvals already issued. (*Ibid*.) Thus, *Uniwill* is inapposite.

Prout thinks Caltrans should be estopped from invoking the *Nollan* statute of limitations because Caltrans probably refrained from pursuing execution of a deed out of

guilty knowledge that its exaction was unconstitutional under *Nollan*. However, this is speculation by Prout for which he cites no evidence. To the contrary, the evidence supports the trial court's finding that Caltrans did not pursue execution of a deed because the matter simply "fell through the cracks."

We conclude Prout's *Nollan* challenge is time-barred.

## II

### *Inverse Condemnation*

To state a cause of action for inverse condemnation, the property owner must show there was an invasion or appropriation (a "taking" or "damage") by a public entity of some valuable property right possessed by the owner, directly and specially affecting the owner to his detriment. (*City of Los Angeles v. Superior Court* (2011) 194 Cal.App.4th 210, 221.) The government is obligated to pay for property taken for public use or damaged constructing public improvements. (*Ibid*.)

Inverse condemnation presents a mixed question of fact and law. (*Ali v. City of Los Angeles* (1999) 77 Cal.App.4th 246, 250.) We review the trial court's determination of the historical facts for substantial evidence; we review de novo the applicable law and application of that law to the facts. (*Ibid*.)

We agree with the trial court that there was no taking requiring compensation because Prout in 1990 offered to dedicate the strip to Caltrans for widening Highway 12, and Caltrans in 2010 validly accepted the offer by physically occupying the strip to make the highway improvements. We are not sympathetic to Caltrans's assertion that it did not "discover[]" that Prout failed to complete the formal deed process until Caltrans started preparing for its road improvement project in 2008. Caltrans always had the means to determine whether or not Prout completed the deed process; Caltrans simply dropped the ball. Nevertheless, since Prout did not revoke the offer before Caltrans accepted it by physically occupying the land for the dedicated public use, the acceptance is valid.

10

A.     General Legal Principles About Dedication of Land

Dedication of land means that a private landowner transfers an interest in real property to the public.  (*Scher v. Burke* (2017) 3 Cal.5th 136, 141 (*Scher*).)  Private land may be dedicated to public use either under controlling principles of common law or pursuant to statutes such as the Subdivision Map Act (Gov. Code, § 66477 et seq.).  (*Biagini v. Beckham* (2008) 163 Cal.App.4th 1000, 1014-1015 (*Biagini*).)  Neither side in this appeal relies on the Subdivision Map Act or any other statute governing dedication of land to public use.

Moreover, common law and statutory dedications do not always operate independently of each other, and even a statutory dedication can be subject to common law principles that do not conflict with the statutes.  (*Biagini, supra,* 163 Cal.App.4th at pp. 1015-1015, 1016.)  A failure to complete a statutory dedication does not negate the possibility of a common law dedication.  (*Id*. at p. 1009.)  An incomplete statutory dedication will, when accepted by the public, operate as a common law dedication.  (*Ibid*. [where right-of-way offered for dedication to the public was also subject to two private easements, use of road by two property owners and their clients was consistent with their private easements and did not constitute public use impliedly accepting dedication].)  Here, neither side invokes any statute that creates a conflict with any common law rule governing dedication.

Dedication does not operate as a grant, but is in the nature of estoppel *in pais*, which debars the owner from recovering it back.  (*Biagini, supra,* 163 Cal.App.4th at p. 1012.)  "[W]here the public at large relies on an offer to dedicate land to public use to such an extent that it would be unfair under principles of estoppel to deny the public continued use of the land for that purpose, implied acceptance of the offer of dedication will be found."  (*Ibid*.)

"Under the common law, a dedication may be made either expressly or by implication.  [Citations.]  Common law dedication, whether express or implied, requires both an offer of dedication and an acceptance of that offer by the public.  [Citation.]  An offer of dedication may be 'implied in fact' if there is proof of the owner's actual consent

11

to the dedication.  [Citations.]  An offer of dedication may also be 'implied by law' [citation] if the public has openly and continuously made adverse use of the property for more than the prescriptive period [citation]."  (*Scher, supra*, 3 Cal.5th at p. 141 [statutory rule against implied dedication applied to roadways].)

To effect a common-law dedication of land by a private owner for public use, it is essential that the owner make a clear and unequivocal offer of dedication, and that the public accept the offer.  (*California Water & Tel. Co. v. Public Utilities Commission* (1959) 51 Cal.2d 478, 494; *Carstens v. California Coastal Com*. (1986) 182 Cal.App.3d 277, 285 (*Carstens*).)  An offer to dedicate by the owner, and acceptance by the public, may be manifested in several ways.  All that is necessary is sufficient evidence that the property owner either expressly or impliedly manifested an unequivocal intention to offer the property for a public purpose, and that there was an acceptance of the offer by the public.  (*Cherokee Valley Farms, Inc. v. Summerville Elementary School Dist*. (1973) 30 Cal.App.3d 579, 584-585.)

Dedication by map or plat has been a common method of dedicating land to public use for street purposes.  (*Flavio v. McKenzie* (1963) 218 Cal.App.2d 549, 553; *McKinney, supra*, 203 Cal.App.2d at p. 115-116.)  The act of recording, i.e., filing, the map showing defined areas for streets is an offer to dedicate that land for street purposes. (*Flavio,* at p. 553; *McKinney,* at p. 115.)

Dedication is effectuated when the public accepts the offer.  (*Carstens, supra*, 182 Cal.App.3d at p. 285.)  Acceptance of a common-law dedication may be express or implied.  (*Ibid*.; *McKinney, supra*, 203 Cal.App.2d at p. 115.)  Acceptance is implied where the public has made use of the property for a period of time demonstrating intent to accept dedication without any formal action by the governmental agency, or where actions by the responsible public officials indicate an assumption of control over the property.  (*Carstens,* at p. 285; *McKinney,* at pp. 115-116.)  If such acceptance precedes any revocation of the offer, the dedication forthwith becomes effectual and irrevocable. (*McKinney,* at p. 116.)

12

"Supplementing these rules is the requirement that the use which implies an acceptance must occur within a reasonable time after the offer is made. [Citations.] What constitutes a reasonable time depends upon the circumstances in each case. [Citation.] The sufficiency of a use to constitute acceptance as well as the timeliness thereof ordinarily are matters which involve questions of fact. [Citations.]" (*McKinney, supra*, 203 Cal.App.2d at p. 116.)

B.    Application to this Case

Prout says he does not understand how the court could find he was not credible in his denial of an intent to dedicate the strip in 1990, because it is undisputed that he never spoke to anyone at Caltrans about anything, and his agent (who was not called as a witness at trial) handled everything. However, Prout forgets he is bound by his agent's actions. (Civ. Code, §§ 2295 et seq., 2330 [rights and liabilities acquired by agent bind principal]; *City of Venice v. Short Line Beach Land Co*. (1919) 180 Cal. 447, 452-453 [offer of dedication may be made by duly authorized agent].)

Moreover, substantial evidence supports the trial court's finding that Prout was not credible. On substantial evidence review, we ask whether there is any solid evidence, contradicted or uncontradicted, that supports the finding of the trier of fact. (*Crawford v. Southern Pacific Co*. (1935) 3 Cal.2d 427, 429.) Here, there is a good deal of evidence supporting the trial court's finding, including that Prout signed his consent on the first page of the subdivision map, never paid taxes on the strip of land, and left that strip outside of the fencing installed around the subdivision.

In the trial court, Caltrans asserted it "accepted" the offer of dedication both when it issued the encroachment permit and when it made the highway improvements. The trial court ruled only that acceptance occurred when Caltrans made the highway improvements. On appeal, Caltrans abandons it position that acceptance occurred when the permit issued.

Thus, Caltrans's position on appeal is that: "Caltrans accepted the offer of dedication when the road improvements were made during its 2010-2011 Highway 12

13

improvement project." (Orig. emphasis.)  As indicated, this constitutes implied acceptance.  (*Carstens, supra*, 182 Cal.App.3d at p. 285.)

Whether there was an implied acceptance of an offer of dedication is a question of fact, and we review the trial court's findings for substantial evidence.  (*Biagini, supra*, 163 Cal.App.4th at p. 1010.)

Caltrans notes Prout took no steps to revoke his offer before Caltrans took over the strip of land in 2010, even though he received Caltrans's letters in 2008 and 2009 asserting Prout was required to convey a deed.  He did not attempt to disavow the dedication or demand compensation until his lawyer's letter to Caltrans in February 2011, after Caltrans had already accepted the offer of dedication.

Although 20 years passed before Caltrans accepted Prout's offer of dedication, the delay was reasonable under the circumstances, as found by the trial court, including that execution of the deed simply "fell through the cracks," and Prout never exerted any ownership of the strip, never paid taxes on it, and did not fence it in with his subdivision parcels.

Courts have found valid acceptance of offers to dedicate land where the public entity accepted the offer more than 30 years after the offer was made.  (*City of Yuba City v. Consolidated Mausoleum Syndicate* (1929) 207 Cal. 587, 589-590 [31 years]; *Wright v. City of Morro Bay* (2006) 144 Cal.App.4th 767, 770-773 (*Wright*) [county's 1935 acceptance of landowners' offer in 1888 to dedicate a street for public purposes in a subdivision map, vested title to the street in the city].)  A *statutory* offer of dedication by filing a map may be accepted within 25 years before application of a conclusive presumption that the offer was not accepted.  Thus, section 771.010 provides:  "If a proposal is heretofore or hereafter made to dedicate real property for public improvement, there is a conclusive presumption that the proposed dedication was not accepted if all of the following conditions are satisfied:  [¶]  (a)  The proposal was made by filing a map only.  [¶]  (b)  No acceptance of the dedication was made and recorded with 25 years after the map was filed.  [¶]  (c)  The real property was not used for the purpose for which the dedication was proposed within 25 years after the map was filed.

14

[¶]  (d)  The real property was sold to a third person after the map was filed and used as if free of the dedication." (*Wright,* at pp. 771-773 [§ 771.010 did not apply retroactively].)

Here, Caltrans validly accepted the offer, completing the dedication, within 25 years.  This defeats Prout's inverse condemnation claim.

We conclude Prout fails to show grounds for reversal of the trial court's rejection of his inverse condemnation complaint.

III

*Statutes of Limitations Do Not Bar Caltrans's Cross-Complaint*

Prout argues Caltrans's cross-complaint for breach of contract, promissory estoppel, and specific performance should be barred by the five-year statutes of limitations in sections 318 to 321 for recovery of real property.  We disagree.

Section 318 states, "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action."  Section 319 states, "No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out of the same, can be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted, or the defense is made, or the ancestor, predecessor, or grantor of such person was seized or possessed of the premises in question within five years before the commencement of the Act in respect to which such action is prosecuted or defense made."  Section 320 provides, "No entry upon real estate is deemed sufficient or valid as a claim, unless an action be commenced thereupon within one year after making such entry, and within five years from the time when the right to make it descended or accrued."  Section 321 states, "In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appear that the

15

property has been held and possessed adversely to such legal title, for five years before the commencement of the action."

Assuming these statutes apply to an offer to dedicate land by deed for public purposes, Caltrans's cross-complaint filed in December 2012 *was* filed within five years of Caltrans's 2010 acceptance of the offer of dedication.

Prout argues Caltrans's cause of action "would have accrued at the time the encroachment permit conditions were satisfied or when the subdivision map was recorded" in 1990 and 1991. However, the permit condition for a deed was never satisfied. And Caltrans's right to specific performance to compel a deed accrued when Caltrans in 2010 accepted the 1990 offer of dedication. (*Scher, supra*, 3 Cal.5th at p. 141 [dedication requires both an offer of dedication and an acceptance of that offer by the public].)

As indicated, where a public entity accepts an offer of dedication by putting the land to public use, the use "must occur within a reasonable time after the offer is made. [Citations.] What constitutes a reasonable time depends upon the circumstances in each case. [Citation.] The sufficiency of a use to constitute acceptance as well as the timeliness thereof ordinarily are matters which involve questions of fact. [Citations.]" (*McKinney, supra*, 203 Cal.App.2d at p. 116.) If such acceptance precedes a revocation of the offer, the dedication forthwith becomes effectual and irrevocable. (*Id*. at pp. 115-116.)

As discussed *ante*, Caltrans validly accepted Prout's offer of dedication by physically occupying the strip 20 years later, and the evidence supports the trial court's finding that the delay was reasonable under the circumstances.

We conclude Prout fails to show grounds to reverse the judgment.

### DISPOSITION

The judgment is affirmed. We exercise our discretion to have the parties bear their own costs on appeal (Cal. Rules of Court, rule 8.278(a)(5)), because section 1036

16

authorizes costs only for a prevailing plaintiff in inverse condemnation proceedings, and Caltrans has not requested costs on appeal.

                                        HULL            , J.


We concur:


    RAYE            , P. J.


    BLEASE          , J.


17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| LOREN PROUT,<br><br>      Plaintiff, Cross-defendant and Appellant,<br><br>    v.<br><br>DEPARTMENT OF TRANSPORTATION,<br><br>      Defendant, Cross-complainant and Respondent. | C076812<br><br>(Super. Ct. No. 11CV37909)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of Calaveras County, Thomas A. Smith, J.  Affirmed.

Law Offices of Kenneth M. Foley, Kenneth M. Foley for Plaintiff, Cross-defendant, and Appellant.

Jeanne Scherer, Chief Counsel, Ardine N. Zazzeron, Assistant Chief Counsel, Daniel E. Muallem, and Joseph P. Carroll for Defendant, Cross-complainant, and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed on December 18, 2018, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


BY THE COURT:



    RAYE          , P. J.



    BLEASE        , J.



    HULL          , J.